Third case today, last case this morning, case number 4111050, Harrison v. Newby, for the appellate, David Nelson, for the appellee, William Sunderman, Mr. Nelson. May it please the court, Mr. Sunderman. This case was brought by the plaintiffs, the appellants, for ejection and possession of 1.991 acres in Coles County. Defendants filed a counterclaim and sought reformation of her deed and that of her predecessors stemming from a divorce in 1991 in which her grandparents, in their divorce, divided in 80 acres. It must be noted that defendant explicitly and repeatedly has taken the position that the marital settlement agreement which was incorporated into the judgment of dissolution of marriage need not be reformed, but only the deed. To obtain reformation of a deed in a case of this nature, the defendant had to establish that the deed did not match the agreement. I believe it's easiest to look at a case of this nature when you're dealing with subsequent purchasers and a deed that, at the time of filing the suit, is approximately 18 years old, as requiring four elements. The first element is knowledge of a discrepancy between the legally described property line and some monument or landmark that you're going to use as a dividing line. If the parties have that knowledge, then the parties can go on and form an agreement to use the monument. Then, when they form that agreement, if an error is made, that being the third step, in the description by the scrivener, we start to talk about reformation. When we're dealing with subsequent purchasers, as in this case, both the appellant and appellee, that being original parties to the 91 conveyance, did the subsequent purchaser have notice? We rely on the Supreme Court case Skinner v. Francisco. The appellee is relying upon the Sheeler case from the 3rd District. Can I ask you a question? At the time of the divorce, is it correct in my understanding that there were basically two 40-acre parcels and they were divided by a road? Correct. And so, I can't remember the man's name. Basically. Right. The husband got the 40 acres on each side and the wife got the 40 acres on the west. Just the opposite. Okay. Whichever way. And the road halfway up between the two 40-acre tracks, it's characterized in the brief, Your Honor, as making a jog. That may be a misstatement by all of us. It veers slightly to the northwest. And as a result, the road on the southern half of the two 40-acre tracks, which is going north-south of the road, is really the section line. And then as the road veers, the section line continues straight north, leaving a triangle containing 1.991 acres. On the opposite side of the road. On the opposite side of the road. That's what our parties are claiming because their deed matched, was drawn based upon quarter section lines. Judge Schick wrote a five-page, fairly detailed written order here explaining what he saw after the bench trial was conducted, that he heard witnesses. Correct. Where did he go wrong? Well, I think he went a couple places wrong. The major place that you go wrong is you're talking about notices to the Harrisons because there's a fence. I don't think you ever get to the notice requirement because you never get through. The parties knew that there was a discrepancy. But they never thought they were buying that fence portion, did they? Who did? Your clients. They thought they were buying 20 acres. Right, but their 20 acres, however it's drawn, to them was on the west side of the road. They thought they had 20 acres on that side of the road. I believe that's correct. But they thought they had 20 acres, and to get 20 acres, they needed the 2 acres on the other side of the road. They didn't survey it before they purchased it. They did not. Not me. Okay. I'm going to try to reconcile the Illinois Supreme Court case of Skinner v. Francisco and the 79 Third District case. We'll start with the Third District case in Sheeville. The original grantor was an individual named by Mr. Witt. Mr. Witt sold his property, and this is divided by East and West Road with a jog in it, to two individuals by the name of Sheeler and Bapper. At the time, everybody knew of the jog, and the parties agreed that Mr. Sheeler was taking one side of the road, and Mr. Ballard was taking the other. Mr. Ballard, a couple of years later, sells his property to his grantees, a Mr. Copeland and a Mr. Bain. In that case, the realtor testified, we told this individual that he was only buying his side of the road. The individuals, Copeland and Bain, went into possession. They saw Mr. Sheeler's tenant farming the disputed tract of 7 1⁄2 acres, a man by the name of Akers, and they said nothing. Two years later, they fence off the 7 1⁄2 acres and claim it is theirs because of the section line. Understand that in that case, the original parties knew of the discrepancy between the landmark, the road, and the property line, and they agreed to follow the landmark, not the property line. The distinction, when you go to the Skinner v. Francisco case, decided by our Supreme Court in 1949, is in the Skinner case, you're dealing with Mrs. Burns. She's dividing 160 acres, 80 to the east, 80 to the west, and there's a hedge fence, or a hedge line, and Mrs. Burns believes that the hedge line is the dividing line of the two 80s. So she sells, based upon a legal description, the west 80 and the east 80. After the sale, one of the buyers gets a survey and determines that the hedge line is 33 feet off of the deed line. So he claims the additional 33 feet and puts in a fence. The other party asks for reformation. The Supreme Court says, you're not entitled to reformation. The reason is, if you see the distinctions between Skinner and Sheilor, is Mrs. Burns did not realize that the hedge line did not match the property line. And the Supreme Court said, if the boundary line is not in dispute, nobody knows there's a problem, in essence, and the intention of the parties is merely to determine the exact or true line, and the agreement between the parties to use a hedge line is not to settle the dispute, then, in essence, the agreement will not be binding and the line will not be established because of the agreement. The Supreme Court goes on to say, in such cases, there is merely a failure to find a true line, through accident or mistake, not an agreement to adopt something other than the true line. Counsel, Judge Schick addressed this case and other cases in his finding. He said Skinner was inapplicable, and from reading his five-page written opinion, it appears to be that this was based upon his factual findings concerning who did what, who understood what, who was required to do what. Isn't the question before us simply whether or not Judge Schick's findings and his explanation of this was contrary to the manifest weight of the evidence?  Well, don't you first have to convince this court that his findings were contrary to the manifest weight of the evidence? Because if they weren't, then... But if one of his findings are contrary to what the law is, and he's relying upon the notice, and you don't even get there under the Skinner case. And he does rely heavily upon notice that the Harrisons knew of the fence. So what? But I thought he also said, I've read somewhere, I thought there was part of a transcript from the dissolution matter, where the attorneys put on record that they were agreeing to use the rope as the dividing line. Well, first of all, I think I would be wary about that transcript, and I would ask Your Honor to go back and look as to what was said. Mr. Kreckman, in testifying at the trial of Representative Rosella Pollard, described the property as the East and West Forties with legal description. Mr. Pollard's lawyer interjected in the transcript, well, the rope. The response of Mr. Kreckman was not, I agree, we're using rope. The response in the transcript was, whatever. Then, the marital settlement agreement is written, which does not mention a rope. Just like the Supreme Court said in the Skinner case. Had they mentioned the head fence, it would have been okay. But you guys didn't mention the rope. Nobody realized that the rope took, using the defendant's language, an imperceptible or tiny jog, which I think is more characterized as a veer. The parties didn't know it. That's admitted on page two of the Apolese brief. But none of the parties realized that the rope and the section line were not synonymous. Therefore, the marital settlement agreement, the judgment which incorporated it, didn't say anything about a rope. And the parties, even if they did agree to use a rope, the Supreme Court in Skinner says, wait a minute, that agreement is not binding unless they realize that there was a discrepancy between the rope and the section line. And I think that's the point Judge Steigman and Judge Schick missed. Because it is clear from the evidence that he heard that nobody knew of this difference until the survey was made. And that is found not only in the transcript, but is also found even in the Apolese brief. Give me just a moment. There are two other matters I want the court to consider. The first matter has to do with 735 ILCS 5214-01, Relief from Judgments. You have to remember that the marital settlement agreement signed by the parties, their last written expression, does not use the rope. It uses a section line. It's incorporated into a judgment of disillusion of marriage in 1991. That judgment long ago was final, and relief cannot be given from that judgment. So the defendant says to Judge Schick, we just want you to modify the deed, not the agreement. Can you modify the agreement? It's part of an 18-year-old judgment when this case is filed. Then look at this. Is your answer no? My answer is no, unless they're explicit. What case stands for that proposition? I think the statute of all the cases under 1401 say a judgment that old isn't going to be modified absent fraud or certain other extenuating circumstances. So modification of a deed can't be? Done without modifying the agreement? Your own court said it can't be. In Goodwine, State Bank v. Mullins. Were we right? Pardon me? Were we correct? I believe you were totally right in that case. Just a second. And in that case, which is the most recent of the cases we're talking about, which is 1993, that's exactly what the issue is. There was an agreement. The deed comported with the agreement. The bank dropped its claim at the 11th hour to modify or reform the agreement and said, no, we only want to reform the deed. And this court said in 1993, uh-uh, that's a foul. You can't do that. If you don't reform the agreement, you're not going to be allowed to reform the deed. What did Judge Schick say about Goodwine? I don't recall him saying anything about Goodwine. Was it argued to him? I don't recall. I noticed Judge Schick said Skinner was distinguishable, but his written word doesn't explain how. I can't figure out how Skinner is distinguishable because I think it is on all fours with this case, which is, in that case, Mrs. Burns believed the tree line was the center line, and in this case, Mrs. Pollard believed the road was the center line. And I don't see that's how it's distinguishable. I clearly understand that Sheilor uses the road, but the parties at the initial agreement knew the road and the section line did not, were not synonymous, and they agreed to use the road. Take an analogy for a moment. And I think Judge Schick relies, in answer to Your Honors, Mr. Stegman's question, an awful lot on that the Harrisons had noticed because the fence was there. Too bad. And I think that Justice Pope has already thrown that at me. The problem is, if you just say, well, because the Harrisons have noticed, they lose. Why don't we abolish the whole law of adverse possession, as we have known it in this state since before Abraham Lincoln and the statutes? Arguably, if this were an adverse possession case, but since it's a Reformation of Deed matter, it seems to be rather different. Is it? Is it? If you're not going to modify an agreement? Let's do a quick analogy, Your Honor. Isn't the whole idea behind Reformation of Deed to get it the way the parties agreed? Yeah. Okay. But the parties... And Judge Schick says, hey, I've heard evidence about this. This is what the parties agreed to. What's the issue? Okay. The issue is, what the Supreme Court said, and we argued Skinner with him, if the parties didn't know of the discrepancy, the difference between the hedge line and the actual line... Let's go back to the very first point Justice Pope made. I mean, they understood where it was. Then you're saying they're put on notice, and notice trumps everything, including the 20-year rule on adverse possession. Why don't we just get it right according to what the parties originally intended, if we know what it was and we know what it was? I don't know that we know what it was. But Judge Schick said he conducted a hearing, heard evidence, and resolved it, didn't he? He said that. That was why my question was, was this contrary to the manifest weight of the evidence? That was my question. But Gerald Pollard never made a claim to that 1.99 acres following the divorce, right? I don't know. He sold the property following the divorce. Immediately afterwards? Shortly thereafter. But Mrs. Pollard lived on the other side for how long? For how long do you know? Until she died in 2005, for approximately 14 years. And nobody ever made a claim? No. Nobody realized until the Harrisons bought it. And, as you more than aptly pointed out, got a survey after the fact, and were told, well, yes, you did buy 20 acres, but in essence two of your 20 acres are on the other side of the road. Mr. Nelson, you are out of time, but you'll have rebuttal. I realize that. Thank you. Mr. Sunderman. Thank you. Now, I don't see where you responded to the Goodwine case or the Skinner case. Could you address both of those? I would be delighted to. I'm sorry, Justice Kinect isn't here. He wrote the Goodwine case. The Goodwine case and all of these equitable proceedings are very fact-intensive. I think we need to bear in mind that it's hard to find as precise rule applicable across a wide range of equitable cases. But Goodwine involved a deed-in-lieu agreement prepared by the bank. The case hinged on the fact that a son of the borrowers had a contingent remainder in the farmland that mom and dad, who dad was a lifetime, had mortgaged. I'm not sure why it's a contingent remainder as opposed to a vested remainder, but be that as it may, the court held it as a contingent remainder. The agreement provided that the son, who the court pointed out, had signed these documents not knowing the significance of them, that the son was to execute a quit-claim deed and convey whatever interest he had in the property to the bank. It then came about that the bank realized or it came to the point where the conclusion that the quit-claim deed didn't convey a contingent remainder and that this grandson of the testator had his interest in the farm and their deed-in-lieu didn't work. They then came to court and sought reformation and they argued before then-associate Bernthal. They argued that the agreement, the underlying deed-in-lieu agreement needed to be reformed and they offered proof on that issue. And then at the close of the case concluded that they really needed to fix the deed, not the agreement, and they asked the court to reform the deed. One of the key significant issues in Goodwine was can you file a complaint for one thing and in final argument ask for a different remedy? This court said no. But to make the case distinguishable from our case is very simple. In our case there were three recitations. In Goodwine there were two. There was an agreement and a deed. In this case there was the recitation before the divorce code in 1991 in which the parties represented they were dividing the marital estate half and half. The real estate was going to go on the east side of the road to Mother Pollard and on the west side of the road to Father Pollard. And there was no dispute between the parties as to who got what. In fact, Mr. Pollard's lawyer, Mr. Dotson, intervened in the recitation to affirm that Jerry Pollard got what was west of the road. The deed followed the section line and not the road. So did the order, didn't it? So did the order, but the order was to incorporate the oral agreement represented to the court. And the oral agreement represented to the court was exactly what the parties did. They divided it east and west. Okay, I'm right back to Goodwine. We've got the order, the written agreement. You're not seeking reformation of either of those. You're seeking reformation of the deed. Goodwine says you can't do that in the Parole Evidence Rule. I still don't see how it's distinguishable. Goodwine doesn't say that. Goodwine said there was no mistake in the deed. The deed followed exactly what this deed in lieu agreement that they asked to be modified. But was there a mistake in this deed? No. The deed correctly recites the legal description. What the deed does not do is recognize the intention of the grantors in dividing it east of the road and west of the road. Well, isn't that a mistake if it doesn't recognize the intention of the grantor and grantee? It is a mistake. Isn't the legal description in the deed a mistake?  But the factual circumstances between this case and Goodwine are substantially different. How about the rule of law regarding parole evidence? Enforcing a written agreement? Excuse me? That's the Skinner Rule. Francisco versus Skinner is a rule in which the Supreme Court said you can't transfer real estate by parole. That was one of their observations, and that's true. There was no dispute in Skinner. There was simply a mistake. The court points out if there's a dispute and a resolution of a dispute and an agreed resolution of that dispute, the line is whatever they agreed to. I don't have any argument with that, but that's not the case in this instance. What the trial court found was that this case paralleled so closely the Schlore case that the Schlore case rule was applicable. And if you look at Schlore and you look at the history, you'll find Schlore is one of three cases. It's not an aberration. It's the second of a series of three cases where that same issue was addressed. Is it consistent with Skinner, which is the Supreme Court, which is the court we have to follow? I think it's consistent with Skinner. The facts are entirely different. They're attempting to reform in Skinner a description where there was no mistake. A woman simply thought the line was in one place and represented that's where it was. But the deed didn't provide that. In the case before the court, as in Schlore, as in its predecessor case, which was Shurline, the parties sought to reform a deed because the mistake was made in the mutual understanding of the parties. Not a unilateral mistake like Skinner, but a mutual mistake where both parties thought they were doing something they didn't. And that's the circumstance that the court found consistent. Is it your contention that in Skinner there was just one person making a claim that there was a mistake here? Yes. Misunderstanding? Yes. And in here, everyone agreed? The parties did. The parties being mom Pollard and dad Pollard, they agreed on where the division was. And the lawyers agreed on where the division was. The deed simply didn't reflect it. Was there anyone at this trial level who disputed that factual contention? No. Go ahead. I'm not so sure I can pick up my thread of thought. My suggestion to you is simply this. The court heard the evidence, considered all of the evidence, looked at the transcript of proceedings before the divorce court that was specifically approved by the divorce judge as dividing the property equitably, dividing the marital estate equitably, and ruled in favor of Christa Newby. That in fact, the 1.99 acres in a very long, skinny triangle that runs from the north part of the tracks, clear past her driveway and her mailbox, which has been fenced and contained on that side of the road for a period in excess of 50 years. The trial court, I believe, correctly and reasonably concluded that the deed needed to be reformed and that the people who had acquired their interest by a survey and didn't ever think they owned the property until the surveyor made the determination that it was in fact on the west side. Why did they get a survey? It's my recollection, and I would rely on counsel to correct me, it's my recollection there was a question about the boundary line on the plaintiff's property to the south. It didn't involve a dispute between the Newbys and the Harrisons about where a line was. It involved some question, and I dispute maybe too strong a word, a question the Harrisons had about the south boundary of their property. Mr. Pollard, Father Pollard, took his west half and subdivided it. I think the transcript reflects that it was cut up into three or four different pieces of property, and there was some issue about one of those survey lines. That's how the survey came about in the first place. Mr. Sunderman, I asked Mr. Nelson, let me ask you, is this a case where we're reviewing a factual determination by the trial court? The trial court decided this as to what there being a mutual mistake here, and the deed should be reformed based upon that finding so that our standard review is this decision contrary to manifest way of the evidence. You heard Mr. Nelson say, oh no, that was a mistake of law. I heard Mr. Nelson say that. I'm not sure where the mistake of law was, but I want to give you an opportunity to respond to his position on that. With all due respect to Mr. Nelson, I think he's wrong. I think this is a manifest way case. The chancellor heard the evidence. He applied the equitable rules of law. He considered the position of the parties, and he considered the case, the three cases, the Schlur. I know he cited three in his order that he thought he was following. And the cases that are of interest are the cases that connect with Schlur that the judge didn't recite. And that's Shirline and Schlin's, all three S's, are a series of cases all based upon reformation of a deed when the parties believe one thing and the paperwork produces another result. So these are mutual mistake cases? Yes. Skinner was not a mutual mistake case? No. No, it was not. And surely the Goodwine case was not. So both cases, I think, are clearly distinguishable. I think the trial judge was very impressed with the fact that the attorney in the divorce case came and testified as to what they intended. Who was that? Fred Kreckman, a lawyer who's now retired from Paris. I think the trial court was impressed with the fact that the divorce court specifically listened to what the division of the property was going to be and found it to be fair and equitable and divided a marital estate based upon those representations. And the parties to that divorce abided by that. For those reasons, I respectfully suggest that the trial court should be affirmed. And I'd be glad to answer any more questions. I see none, Mr. Sunderman. Thank you very much. I won't. Thank you. Mr. Nelson, as I'm trying to wrestle with this, let me give you, ask you to address what Mr. Sunderman just said so I won't forget it. You heard his claim distinction being that the Supreme Court decision did not involve mutual mistake. It was a claim of this one woman said, oh, no, it was right. It was wrong. That wasn't the boundary. And the other cases he cites and the court cited were mutual mistake cases as being a distinction. Before you get into other aspects of rebuttal, I want you to address that. I think this is on all floors with the Supreme Court case and Skinner. The reason that the Supreme Court and Skinner said there is no mutual mistake between the grantor and the grantee is nobody realized that there was a discrepancy between the hedge row or hedge fence and the actual property line by 33 feet. Therefore, the parties could not come to an agreement to move a line. They didn't know. So there is no mistake. It's just an erroneous line established by Mrs. Burns when she is selling to Mr. Skinner and Mr. Francisco. Doesn't the testimony of Mr. Crickman that Mr. Sunderland just referenced make that different than this case? No, because look at the record in this case. There is nothing in the record that Judge Schick heard whatsoever that indicates Mr. and Mrs. Pollard knew that there was a discrepancy between the road and the actual property line, the dividing line. Nothing. And in fact, as I previously mentioned, the defendant admits on page 2 of its appellee's brief, nobody knew. The defendant also admitted that in the trial court. So Mr. Pollard and Mrs. Pollard could not reach a mutual agreement to use the road if they didn't know there was a distinction between the road and the section line. And that's exactly what Skinner said. Hey, Mrs. Burns told Mr. Skinner, you're getting the west half. I believe it goes to this hedge line, told Mr. Francisco. You're getting the east half. I believe it goes to this hedge line. They were all wrong. That's the same thing that happened here with Pollard. The people did not realize about this, their language, not mine, imperceptible job. And this case is on all fours with Skinner. And Sheilor, everybody knew that there was a difference. Not only the original grantors, but the subsequent grantor and his two grantees, but the subsequent grantee, everybody knew of the difference. So Mr. Nelson, if at the time of the divorce they had realized Mr. Pollard was getting approximately 38 acres and Mrs. Pollard was getting about 42, they would have made an adjustment in the amount perhaps of the... That's 1991. Yes, I was practicing law, but I didn't know either of these people. I don't know what they would have done. I do know that according to the signed agreement that they entered into, they were both getting approximately 40 acres. I do know that when my client bought their property, they thought they were getting 20 acres. They didn't realize that two acres of that farm was across the road. But they still got what they bargained for in the standpoint of nearly 20 acres. The Skinner case was 1949. Correct. That case has never been reversed. Yeah, but the cases cited by Judge Schick and the cases that have been argued to us are all since then. Are they all just in disregard of Skinner? I don't believe they're in disregard. Again, in Sheilor, the facts are different than in the case before this court and the case before the Supreme Court. Because in Sheilor, everybody knew of the discrepancy between the property line and the monument. In that case, a road. In Skinner, nobody knew of the discrepancy between the hedge line, the monument, and the property line. In this case, the clear evidence before Judge Schick was that none of these parties knew of the discrepancy. If they don't know that there is a problem, then how can you have an agreement to resolve a problem which becomes binding? And that is exactly what the Supreme Court said in 1949. Mrs. Burns and her successors in title that she conveyed to did not know. Mr. Skinner and Mr. Francisco didn't know there was a problem. Therefore, there was no agreement. That's exactly on all fours with this case. In Sheilor, everybody right out of the box knew that there was a distinction. Thank you, Mr. Sunderman. You're out of time. Thank you. He's Nelson. I'm Nelson. Mr. Nelson, thank you, and thank you, Mr. Sunderman. The case is submitted. The court stands in recess.